N. Y., L. E. & W. R. R. Co. v. Steinbrenner.

THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD
COMPANY v. WILLIAM H. STEINBRENNER.

1. A hired a coach and horses, with a driver, from B, to take his family
on a particular journey. In the course of the journey, in crossing the
track of a railroad, the coach was struck by a passing train and A was
injured. In an action by A against the railroad company for dam-
ages—*Held*, that the relation of master and servant did not exist be-
tween the plaintiff and the driver, and that the negligence of the
driver, co-operating with that of the persons in charge of the train
which caused the accident, was not imputable to the plaintiff as con-
tributory negligence to bar his action.

2. A passenger in a hired coach may, by words or conduct at the time,
so sanction or encourage a special act of rash or careless driving as to
commit an act of negligence which will debar him from a suit against
a third person for an injury resulting from the co-operating negligence
of both parties. But for whatever purpose the negligence is invoked
—whether as a cause of action for an injury done by the driver, or as
contributory negligence to bar an action by the passenger against a
third person for an injury sustained—the negligence, to be imputed to.
the passenger, must be such as arises in some manner from his own,
conduct. The negligence of the driver, without some co-operating
negligence on his part, cannot be imputed to the passenger in virtue
of the simple act of hiring.

3. *Thorogood* v. *Bryan*, 8 *C. B.* 114, disapproved.

On error to the Supreme Court.

Steinbrenner, the plaintiff below, sued to recover damages
for personal injuries received in a collision with a train of
the defendant at the crossing of a public road over the de-
fendant's track. The plaintiff was riding, with his four
nieces, in a coach owned by one Merkins, and driven by a
driver who was employed by Merkins. The coach, horses
and driver were hired by the plaintiff of Merkins for the
journey in the course of which the collision occurred.

Among the defences made at the trial was that of contribu-
tory negligence. To the rulings of the trial judge on that

subject exceptions were taken by the defendant, which were brought up by this writ of error.

For the plaintiff in error, *C. Parker.*

*Contra, Vredenburgh & Garretson.*

The opinion of the court was delivered by

DEPUE, J.   The exception taken to the refusal to non-suit presents the same questions that are raised by the exceptions to the charge and the refusals to charge.   The defendant's counsel requested the court to instruct the jury that there was negligence on the part both of the plaintiff and of the driver of the coach, contributing to the accident, which would preclude the plaintiff from a recovery.   The judge charged that if the plaintiff himself was negligent, and his negligence contributed to the injury, there could be no recovery.   He refused to charge, as a question of law, that there was such contributory negligence on the plaintiff's part apparent in the case as would prevent the plaintiff from maintaining his action. This ruling was correct; for, where it is a fairly debatable question, upon the evidence, whether there was negligence in the plaintiff which contributed to the injury, the question is one for the jury.   The court cannot decide that proposition as a question of law unless the plaintiff's contributory negligence clearly appears.   *Pennsylvania R. R. Co.* v. *Matthews*, 7 *Vroom* 531; *Del., Lack. & Western R. R. Co.* v. *Toffey*, 9 *Vroom* 525; *Pennsylvania R. R. Co.*, v. *Righter*, 13 *Vroom* 180.   The testimony on that subject was not such that the judge could say that there was contributory negligence as a legal inference from undisputed facts.

·· The judge also refused to charge that the negligence of the driver of the coach was imputable to the plaintiff, and did not submit the question of the driver's negligence to the jury. This judicial action was based upon the theory that the driver was neither the servant of the plaintiff nor was the latter in law so identified with the driver that the driver's negligence

would prevent the plaintiff's recovering for injuries received from the defendant's negligence.

It is clear that the plaintiff and the driver of the coach did not hold to each other the relation of master and servant. *Quarman* v. *Burnett*, 6 *M. & W.* 499, is directly upon that point. This subject came before the English courts in the earlier case of *Laugher* v. *Pointer*, 5 *B. & C.* 547. In that case the owner of a carriage, having occasion to use it, hired of a stable-keeper a pair of horses to draw it, the stable-keeper furnishing the driver. The driver, by negligent conduct in driving the carriage, ran against and injured a horse belonging to a third person. The latter sued the owner of the carriage for the injury. At the trial Abbott, C. J., non-suited the plaintiff, and the non-suit was sustained *in banc* by an equally-divided court, Abbott, C. J., and Littledale, J., holding the non-suit to be right; Baily and Holroyd, JJ., dissenting.

In Laugher *v.* Pointer all the judges agreed that the defendant's liability for the negligent acts of the driver could arise only from the relation of master and servant, and the dissenting judges placed their opinions on the ground that the defendant had assumed that relation. Finally the question was set at rest by Quarman *v.* Burnett. In that case the defendants kept a carriage and were accustomed to hire horses and a coachman of a job mistress for a day or a drive, for which the job mistress charged and received a certain sum. The defendants generally had the same horses and always the same coachman. The coachman was regularly in the employ of the job mistress, and received from her regular weekly wages. The defendants paid him two shillings for each drive, as a gratuity, and had provided a livery hat and a coachman's coat, which he wore when driving for them and took off on his return to the defendants' house, where the hat and coat were hung up in the passage. He had driven the defendants out one day, and on his return, after the defendants alighted from the carriage, he left the horses and carriage unattended, to go into the defendants' house to leave the livery hat. The horses set off whilst the driver was so occupied, and ran

against the plaintiff's chaise, threw him out and seriously injured him, and damaged the chaise. In a suit against the owners of the carriage for these injuries the plaintiff had a verdict, which was set aside for the reason that the driver was not the servant of the defendants but was the servant of the job mistress, and that the latter alone was responsible for his negligent acts.

Quarman v. Burnett was decided very much upon the reasoning of Abbott, C. J., and Littledale, J., in Laugher v. Pointer, and has been regarded as settling the law in the English courts, that the hiring of horses to be driven by a driver regularly in the employ of the person from whom the horses are hired does not create the relation of master and servant between the hirer and the driver, from which a liability for the driver's negligence would arise. In the latest case in the English courts in which the subject was considered Quarman v. Burnett was approved and followed. *Jones* v. *Corporation of Liverpool,* 14 *Q. B. Div.* 890.

But it is contended by the plaintiff in error that although the hiring of a coach and driver for a journey would not create the relation of master and servant so as to make the hirer responsible to third persons in an action for an injury caused by the negligent conduct of the driver, yet the hirer of the coach is so identified with the driver in the prosecution of the journey that the latter's negligence will be imputed to the hirer as contributory negligence to bar him from the right of suit against third persons for injuries sustained by their negligence. To maintain this contention *Thorogood* v. *Bryan,* 8 *C. B.* 114, is relied on.

In Thorogood v. Bryan the deceased, for causing whose death the suit was brought, was a passenger in an omnibus owned by one B. The defendant was the owner of another omnibus running on the same line. The deceased, while alighting from the omnibus in which he was a passenger, was knocked down by the defendant's omnibus, and received injuries from which his death ensued. The court sustained an instruction to the jury that if the want of care on the part of

the driver of the omnibus in which the deceased was a passenger, in not drawing up to the kerb to put the deceased down, had been conducive to the injury, the plaintiff could not recover, although the defendant's driver had been guilty of negligence. The grounds of this decision appear in the opinions of Justices Coltman and Maule. Coltman, J., said, "that having trusted the party by selecting the particular conveyance, the plaintiff has so far identified himself with the owner and her servants that if any injury results from their negligence he must be considered a party to it." Maule, J., expressed the same idea in this language: "On the part of the plaintiff it is suggested that a passenger in a public conveyance has no control over the driver. But I think that cannot with propriety be said. He selects the conveyance; he enters into a contract with the owner, whom, by his servant the driver, he employs to drive him; if he is dissatisfied with the mode of conveyance he is not obliged to avail himself of it. * * * As regards the present defendant, he is not altogether without fault. He chose his own conveyance and must take the consequences of any default of the driver whom he thought fit to trust."

It will be observed from the reasoning of the judges in Thorogood v. Bryan that the decision was not placed upon the control the passenger had or might have had over the driver's conduct in driving the omnibus, but was rested upon his selection of the vehicle in which he chose to ride; and the decision applies as well to passengers in public conveyances, where interference with the driver's management of his team, if not resented, would likely be futile, and passengers in railroad trains, where the passenger is absolutely without power to control the running of the trains, as to a passenger by a private conveyance hired for a special occasion. The Court of Exchequer, in the only case I have found in the English courts in which Thorogood v. Bryan was applied, gave effect to the doctrine of that case as against a passenger on a railway train who was injured in a collision between trains of different companies through the negligence of the drivers of both trains.

*Armstrong* v. *Lancashire and Yorkshire R. R. Co., L. R.,* 10 *Exch.* 47.

Thorogood *v.* Bryan has been directly repudiated in the English Court of Admiralty, (*The Milan, Lush. Adm.* 388, 31 *L. J.* (*P., M. & A.*) 105; *Chartered Mercantile Bank* v. *Netherlands, &c., Navigation Co.,* 9 *Q. B. Div.* 118; *S. C. on appeal,* 10 *Q. B. Div.* 521, 545,) and is generally cited in the common law courts simply as a case that has not been overruled. It was so cited in Armstrong *v.* Lancashire and Yorkshire R. R. Co., and although both the barons disclaimed any dissatisfaction with the case, Pollock, B., made the observation that " the only difficulty in it arises from the use of the word ' identified ' in the judgment. If it is to be taken that by the word ' identified ' is meant that the plaintiff, by some conduct of his own, as by selecting the omnibus in which he was traveling, has acted so as to make the driver his agent, this would sound like a strange proposition, which could not be entirely sustained. What I understand it to mean is that the plaintiff, for the purpose of the action, must be taken to be in the same position as the owner of the omnibus, or the driver." This comment of the learned baron seems to me to be hostile to the reasoning in Thorogood *v.* Bryan, for that decision was placed expressly on the ground that by selecting the conveyance the passenger had so identified himself with the driver that he must be considered a party to the driver's negligence—a legal sequence that could arise only from the identification being such as that *quo ad hoc* the driver became the agent of the passenger; for the contributory negligence which shall defeat the action must in some sense be the act of the party injured. *Palmier* v. *Erie R. R. Co.,* 5 *Vroom* 151. The substitution of the words " in the same position " for " identified," implies that the theory of the doctrine is that a person doing a lawful act may, without any fault on his part, either personally or imputable to him as being the act of his agent, be placed in a position in which he will be debarred from recovering for an injury received from the wrongful act of a third person—a proposition wholly at variance with

legal principles. A party may, by his act, be in the position in which he receives an injury, and yet not be deprived of his right of suit against a wrong-doer. A person sustaining an injury from the negligence of another is precluded from his action on the ground of contributory negligence only where there has been some fault on his part which was the proximate cause of the injury. "Nothing will preclude him from recovering but such conduct as puts him in the wrong." 2 *Thomp. on Neg.* 1154; *N. J. Express Co.* v. *Nichols,* 4 *Vroom* 435, 439.

Tested either by the reasoning of the judges by whom Thorogood *v.* Bryan was decided, or by the explanation of Baron Pollock in Armstrong *v.* Lancashire and Yorkshire R. R. Co., the doctrine of that case is equally untenable. The decision has not escaped criticism, nor has it passed in the English common law courts without indications of distrust, if not disapproval. It was cited by counsel in *Waite* v. *N. E. R. R. Co., E., B. & E.* 719, and both in the Queen's Bench and in the Exchequer Chamber the court declined to express any opinion upon it, and decided the case on other grounds. It was criticised and strongly condemned by Messrs. Keating and Willes (afterwards judges of the Court of Common Pleas), in the notes to *Ashby* v. *White,* 1 *Sm. Lead. Cas.* [\*342], 505, and the criticism has been referred to by English judges, if not with approval, at least without expression of dissent therefrom. *Taff* v. *Warman,* 2 *C. B.* (*N. S.*) 750; *Waite* v. *N. E. R. R. Co., E., B. & E.* 728; *Spaight* v. *Tedcastle,* 6 *App. Cas.* 217. And this criticism is placed by Mr. Addison in the text of his work on Torts. *Add. Torts* 374. Mr. Bigelow concludes a review of the cases, including Thorogood *v.* Bryan, with the expression of his opinion that "the only case where the so-called doctrine of identification or imputation can be applied is where the passenger actually participates in the carrier's fault, as by urging him on or by plainly manifesting approval of his course, and thus encouraging it." *Big. Lead. Cas.* 726–729.

Thorogood *v.* Bryan has met both with approval and dis-

approval in the courts of this country. It was expressly repudiated by the Supreme Court of this state in *Bennett* v. *N. J. R. R. Co.*, 7 *Vroom* 225. In that case a passenger in a horse-car, who was injured by a collision between a train of the defendant and the horse-car, sued the railroad company, and it was held that the driver of the horse-car was not the agent of the passenger so as to render the passenger chargeable with the negligence of the driver. The Chief Justice, in delivering the opinion of the court, commenting on Thorogood *v.* Bryan, said: " This case stands, I think, in point of principle, alone in the line of English decisions, and the grounds upon which it rests seem to me inconsistent with legal rules. The reason given for the judgment is that the passenger in the omnibus ' must be considered as identified with the driver of the omnibus in which he voluntarily becomes a passenger,' and that the negligence of the driver is the negligence of the passenger; but I have entirely failed to perceive how it is that the passenger in a public conveyance becomes identified in any legal sense with the driver of such conveyance. Such identification could result only in one way —that is, by considering such driver the servant of the passenger. I can see no ground upon which such a relationship is to be founded." The Chief Justice adds: " It is obvious that in a suit against the proprietor of the car in which he was a passenger there could be no recovery if the driver or conductor of such car is to be regarded as the servant of the passenger.   *   *   .   *   The doctrine of the English case appears to convert the driver of the omnibus into the servant of the passenger for the single purpose of preventing the passenger from bringing a suit against a third party whose negligence has co-operated with that of the driver in the production of the injury. I am compelled to dissent from such a proposition."

*Callahan* v. *Sharp*, 27 *Hun* 85, was also cited as a case in point adverse to the ruling of the court below. In that case the suit was brought on the statute to recover damages for causing the death of a child thirteen years old. The

facts were that the mother of the child hired a coach and driver from a livery-stable to carry her and her children to a funeral. The coach, in crossing the defendant's railroad, came in collision with a passing train, causing the death of one of the children. It was held by Dykeman and Gilbert, JJ., (Barnard, P. J., dissenting,) that as the driver of the coach was subject to the control and commands of the mother, his negligence was imputable to her, and that as the mother and children were engaged in a joint enterprise, in which she acted for herself and them, the negligence so imputed to her might be attributed to deceased, and prevented a recovery by his representatives. But it appears from a note in *Abbott's Am. Dig. for* 1883–84, *p.* 344, § 94, that the suit was tried a second time on the theory of the reversing opinion in 27 Hun, and that the judgment in the second suit upon the same facts was in turn reversed by the same court, (Cullen, J., and Barnard, P. J., concurring, and Dykeman, J., dissenting,) on the ground that the deceased was not chargeable with the driver's negligence because the driver was the employee of the stable-keeper, and not under the mother's control in the management of the team, and because, if it were otherwise, the deceased, being an infant of tender years, was *sui juris.* On appeal, this last decision was affirmed by the Court of Appeals without an opinion. *Callahan* v. *Sharp*, 95 *N. Y.* 672. The final result in this case seems to be adverse to the contention of the plaintiff in error, and prior decisions of the same court are to the same effect. *Chapman* v. *N. H. R. R. Co.*, 19 *N. Y.* 341; *Cosgrove* v. *N. Y. & H. R. R. R. Co.*, 20 *N. Y.* 492; *Webster* v. *H. R. R. Co.*, 38 *N. Y.* 260; *Robinson* v. *N. Y. C. R. R. Co.*, 66 *N. Y.* 11.

In the principle which governs in this respect there is no distinction between a public conveyance in which a passenger takes passage and a coach hired by him from a livery for a particular journey; nor is the situation changed by the fact that the negligence of the driver is invoked simply as contributory negligence to exclude the passenger from his action against a third person for an injury resulting from the negli-

gence of both parties. As the Chief Justice points out in his opinion in Bennett *v.* N. J. R. R. Co., the identification of the passenger with the driver for the purpose of fixing on the former responsibility for the latter's act, can result only from considering the driver as the servant of the passenger ; and the driver cannot be converted into his servant for the single purpose of preventing the passenger from bringing suit against a third party whose negligence has co-operated with that of the driver in the production of the injury. The identification must be so complete that the passenger would not only be debarred from a suit against the proprietor of the coach for the driver's negligence in the particular instance, but would also be responsible to third persons for injuries sustained by the carelessness of the driver in the course of the journey. Quarman *v.* Burnett and kindred cases show that the relation of master and servant is not created by such a hiring, and that such a responsibility does not arise from an employment under it. "There may," as was said by Baron Parke in Quarman *v.* Burnett, "be special circumstances which may render the hirer of horses and servants responsible for the neglect of a servant, though not liable by virtue of the general relation of master and servant. He may become so by his own conduct, as by taking the actual management of the horses, or ordering the servant to drive in a particular manner which occasions the damage complained of, or to absent himself at one particular moment, and the like." *McLaughlin* v. *Pryor,* 4 *M. & G.* 48 ; *S. C.,* 1 *Car. & M.* 354, is a precedent of an action successfully prosecuted against the hirer of a carriage and horses for a trespass committed by the driver, who was the servant of the man who let the carriage—the defendant's liability for the driver's act being enforced on the ground that he sat upon the box and countenanced, encouraged and assented to the driver's act, and made the latter's negligent act his own. It may also be that a passenger in a hired coach may, by words or conduct at the time, so sanction or encourage a special act of rash or careless driving as to commit an act of negligence which will debar him from a suit against a

third person for an injury resulting from the co-operating negligence of both parties. But for whatever purpose the negligence is invoked, whether as a cause of action for an injury done by the driver, or as contributory negligence to bar an action by the passenger against a third person for an injury sustained, the negligence, to be imputed to the passenger, must be such as arises in some manner from his own conduct. The negligence of the driver, without some co-operating negligence on his part, cannot be imputed to the passenger in virtue of the simple act of hiring. If the law were otherwise, not only the hirer of the coach, but also all the passengers in it, would be under a constraint to mount the box and superintend the conduct of the driver in the management and control of his team, or be put for remedy exclusively to an action against the irresponsible driver or equally irresponsible owner of a coach taken, it may be, from a coach-stand, for the consequences of an injury which was the product of the co-operating wrongful acts of the driver and of a third person, and that, too, though the passengers were ignorant of the character of the driver, and of the responsibility of the owner of the team, and strangers to the route over which they were to be carried.

In this case there were no special circumstances which would make the driver's negligent act the act of the plaintiff. The plaintiff hired the coach to carry himself and four nieces to a particular place. The journey was along a public road not specially dangerous except in the fact that it crossed the defendant's railroad. The coach was an ordinary closed coach, with two seats inside and a driver's box in front, and a window on each side. The plaintiff and two of his nieces occupied the back seat. The plaintiff testified that he told the driver before starting to be careful about crossing the railroad; that the driver slackened up as he approached the crossing; that he (the plaintiff) listened all the time, and made it his particular business to look and see whether any train was coming; that he did not hear any whistle or bell, or the approaching train, and was not aware of the approach

of the train until it was right upon them.   If the driver was negligent in venturing upon the track, the plaintiff neither encouraged his negligent act nor did he contribute to it by any negligence of his own.   The judge's refusal to charge that the driver's negligence was imputable to the plaintiff was correct.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, PATERSON, WHITAKER.   13.

*For reversal*—None.