126 N.J. Super. 496 (1974)
315 A.2d 697
STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, BOARD OF EXAMINERS OF ELECTRICAL CONTRACTORS, PLAINTIFF-RESPONDENT,
v.
JOULE TECHNICAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Remanded May 18, 1973.
Reargued December 10, 1973.
Decided February 7, 1974.
*497 Before Judges LYNCH, MEHLER and MICHELS.
Mr. Charles K. Kurebanas argued the cause for appellant.
Mr. Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, First Assistant Attorney General, of counsel).
The opinion of the court was delivered by LYNCH, J.A.D.
The issue in this case is whether appellant Joule Technical Corporation (Joule) is engaged in the business of an "electrical contractor," within the meaning of N.J.S.A. 45:5A-1 et seq., which requires anyone engaged in such business to obtain a license from the Board of Examiners of Electrical Contractors (Board). N.J.S.A. 45:5A-9. Joule contends that it is not engaged in such business and needs no license from the Board to do so.
On August 24, 1972 the Board, after a hearing, rendered a decision reaffirming a previous determination by it that Joule was engaged in the business of electrical contracting *498 and imposed a penalty of $200.[1] Joule appealed to this court which, pursuant to an unreported per curiam opinion of May 18, 1973, remanded the matter to the Board for a full hearing, with directions that it make express findings of fact as to the nature of Joule's operation, and conclusions of law. We retained jurisdiction.
A hearing was held before the Board's hearing officer, who thereafter filed findings of fact, conclusions, and recommendations. He recommended that the Board rescind its previous decision that Joule was an "electrical contractor" and remit any fines collected. Upon review the Board rejected the hearing officer's recommendation and reaffirmed its previous position. That determination is now before us for decision.
In making his findings of fact, the hearing officer accepted the testimony which was uncontradicted and which generally described Joule's operation as follows. It hired out temporary employees, including electricians, to companies which needed them as "fill-ins" on a temporary basis. The incident which gave rise to this proceeding involved Joule's providing an electrician to Celanese Corporation. The employee was on Joule's payroll but under the complete supervision of Celanese. After the employee's payroll taxes and fringe benefits, as well as Joule's overhead and profit, were deducted, the employee received the remainder.
The hearing officer concluded:
It is clear from the evidence adduced at this hearing that [Joule] was not in the business of being an electrical contractor, rather they were in the business of supplying manpower on an hourly basis for industries' temporary needs. Modern industry has a need from time to time for fill-ins or temporary help, both technical and otherwise. Service companies spring up to supply this need, and Joule Technical Corporation is just one such company.
*499 The Board, after reviewing the transcript of the hearing and considering the hearing officer's recommendations, made its own "Findings of Fact." In their entirety they were stated:

FINDINGS OF FACTS
1. Between April and October, 1971, Joule Technical Corporation entered into a contract or contracts to supply Celanese with an electrician.
2. Said electrician, one W. Dmytreshin, performed various duties in connection with the maintenance of electrical facilities at the Celanese plants located in Clark and Summit, New Jersey.
3. Mr. Dmytreshin performed such electrical work without the supervision of a licensed electrical contractor, nor is he [sic] a regular employee of Celanese who is a qualified journeyman electrician.
The Board concluded that the facts thus found established Joule as an "electrical contractor" within the statutory definition thereof contained in N.J.S.A. 45:5A-2(d). That definition reads as follows:
"Electrical contractor" means a person who engages in the business of contracting to install, erect, repair or alter electrical equipment for the generation, transmission or utilization of electrical energy; * * *.
Was Joule, then, "contracting" to install, erect or repair electrical equipment when it hires out an electrician as a "fill-in" to another company?
Websters' New International Dictionary of the English Language (2d ed. 1950), 579, defines "contractor" as follows:
One who contracts; a party to a bargain; one who formally undertakes to do anything for another; specif., one who contracts to perform work, or supply articles on a large scale, at a certain price or rate, as in building houses or provisioning troops. Such a contractor specializing in a [specified] material or type of work, as in:
 advertisement coal contractor road contractor
 contractor stone contractor timber contractor
For a person to come within the statutory definition of "contractor," it is clear that he must be undertaking to do *500 the work. It is also evident that, if he engages someone (as an electrician) to do it, the alleged "contractor" is not himself undertaking to do the work unless the person he engages (the electrician) is his servant or agent. Conversely, if that person is not the alleged "contractor's" servant or agent but the work as the servant or agent of the company to whom he is hired out (here Celanese), then the latter (vicariously through the hired electrician), is doing the work and the alleged "contractor" has not undertaken to do it.
When a servant is directed or permitted by his master to perform services for another, he may become the servant of such other. The question of whether the general employer, or the special employer, is the master turns largely upon the decision as to who has the right to exercise control over the servant. Younkers v. Ocean County, 130 N.J.L. 607, 608 (E. & A. 1943). We are not unmindful of differences of opinion as to the influence of the "right of control" test in determining a master and servant relationship, and that, indeed, it depends upon whether the issue involves liability to third persons, or liability of the employer to employee or other considerations. See concurring opinion by Judge Schettino in Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401, 406 (1951) (concurring opinion). True, the "right of control" standard is not the sole test of the master and servant relationship, but it is the predominant one. See Falk v. Unger, 33 N.J. Super. 589 (App. Div. 1955). So too, in Devone v. Newark Tidewater Terminal, Inc., supra, the majority opinion recognized the "control" test as "not merely the important one, but decisive" and the law of New Jersey. 14 N.J. Super. at 405.
We are aware that, in Viggiano v. Reppenhagen, 55 N.J. Super. 114 (App. Div. 1959), where defendant rented a car and driver to another and the driver struck and injured one of the rentee's employees, it was held that the driver remained defendant's master so as to hold it vicariously liable for the injuries. The court pointed out that the defendant *501 was in the regular business of renting trucks, it had full control over the mechanical fitness of the vehicle, and while driving the truck the driver was furthering the interest of his employer. While it may be argued that Viggiano is applicable here, we find it distinguishable. In Viggiano the control of the truck or its driver in the operation of the vehicle did not pass to the rentee as did the control of the electrician to Celanese here.
As the tests of master and servant relationship may vary depending upon the nature of the issue here (Judge Schettino's concurring opinion in Devone, supra), in the construction of the instant statute, i.e., whether Joule is in the business of an "electrical contractor," we conclude that the "control" test is the logically determinative one in demonstrating that Joule is not undertaking "to do" the electrical work in sending an electrician to Celanese.
By way of illustrating application of the relevant principles as to master and servant, Restatement, Agency 2d (1958), § 227, gives the following example:
3. P, a master carpenter, by agreement with B, sends A, a skilled cabinetmaker, to work with B's servants for a week, under the direction of B's foreman, in the reconstruction of a stairway. For this B is to pay P an agreed amount. A acts as the servant of B in building the stairway. [at 502]
That example fits here. Joule would be "P," "B" Celanese, and "A" the electrician sent by Joule to Celanese.
California's Business and Professions Code provides that a "contractor" may not bring an action for compensation unless he is duly licensed. Thus the question arises as to whether one is a "contractor" and, if unlicensed, barred from such a suit. In Dahl-Beck Electric Co. v. Rogge, 275 Cal. App.2d 893, 80 Cal. Rptr. 440 (D. Ct. App. 1969), plaintiff, an electrical contractor, was performing work on a job pursuant to contract, and needed a backhoe for trench-digging. Plaintiff contacted defendant Rogge who sent defendant Stratford and the backhoe to the jobsite. The rate *502 agreed to be paid to Rogge by Dahl-Beck was $14 an hour for providing one man and the backhoe. Stratford was paid by Rogge on the basis of the time spent on the backhoe. Stratford reported to Albright, foreman of plaintiff Dahl-Beck. Albright directed Stratford as to where and how far to dig the trench, and told him to be careful because there were pipes and a water main in the area. During the digging a water main was damaged and plaintiff was required to make emergency repairs. Dahl-Beck started a suit to recover the cost of those repairs but did not pay Rogge for the work done by Stratford. Rogge cross-complained for $1,215 for services performed. Relevant here is the question in that case as to whether Rogge was a "contractor" under the California statute. If he was, being unlicensed, he would be barred from recovery. The jury, after instructions on the issue, held that Rogge was not a "contractor." The court, on appeal, observing that the evidence indicated that Stratford acted on direction of Albright, plaintiff's foreman, and that there was no evidence of supervision by Rogge, held that it was proper to submit the issue to the jury. The court cited, among other cases, that of Rodoni v. Harbor Engineers, 191 Cal. App.2d 560, 12 Cal. Rptr. 924 (D. Ct. App. 1961). There plaintiff testified that he was in the business of renting equipment and hiring out drivers. Payment for equipment and men was made on an hourly basis and plaintiff had nothing to do with the supervision of the work. It was held that plaintiff was entitled to recover, that he was not a "contractor," and the fact that he listed himself as "contractor" only raised a conflict in the evidence. See other cases cited in Dahl-Beck, 80 Cal. Rptr. at 445, particularly Andrew v. Conner, 101 Cal. App.2d 621, 225 P.2d 943 (D. Ct. App. 1951), where the lienor's sole participation was rental of men and equipment to lienee who supervised, directed and controlled the work. There, too, the lienor was held not to be a "contractor" and, though unlicensed, was not barred from recovering his compensation.
*503 We recognize that in the cited California cases the issue as to whether plaintiff (or cross-claimant Rogge in Dahl-Beck), was a "contractor" was said to be determined by the factfinder  jury or judge sitting without a jury. So too, in our State, questions of agency or master and servant relationships are ordinarily for the jury. But jury questions are presented only where there are disputed facts or where disputed inferences may be drawn from undisputed facts. Marion v. Public Service Elec. & Gas Co., 72 N.J. Super. 146, 157-158 (App. Div. 1962). And where the evidence is uncontradicted and permits but one reasonable conclusion as to an issue of agency, that issue is a question of law for the court and not for the finder of fact. Harvey v. Craw, 110 N.J. Super. 68, 74-75 (App. Div.), certif. den. 56 N.J. 479 (1970); Collins v. Ames, 98 N.J.L. 828 (E. & A. 1923); Scherer v. Post Office B. & L. Ass'n, 91 N.J.L. 666 (E. & A. 1917).
We consider it significant that the Board's "Findings of Fact" below  as distinguished from those of the hearing officer  made no determination of the issue as to whether the electrician was under the direction and control of Celanese in doing his work.
Here the evidence is uncontradicted that the electrician hired out to Celanese was completely under the direction and supervision of Celanese. We so find, as fact and law. There was no evidence that there was any such control by Joule. Cf. Dahl-Beck vis-a-vis Rogge. It follows that Joule was not, absent any other evidence to the contrary (per principles of respondeat superior), "doing" the work at Celanese, nor had it contracted to do it. The electrician was the employee of Celanese as he acted under its direction and control.
In support of its decision below, the Board cites Bd. of Examiners v. S.T. Peterson & Co., Inc., 106 N.J. Super. 599 (App. Div. 1969), and Ind. Elec. Ass'n of N.J. v. N.J. Bd. of Exam., 54 N.J. 466 (1969). Neither case is apposite here. S.T. Peterson held that a general contractor who did *504 electrical work only as incidental to his general maintenance work was an "electrical contractor." As the court stated, the work was done "by defendant's electricians." 106 N.J. Super. at 601. In fact the court expressly said "the electricians are not employees of Shell." Id. at 603. There was no indication that they were under Shell's direction and control. The evidence here demonstrates uncontrovertibly that the electrician was solely under the control of Celanese. S.T. Peterson went on to hold that the contractor was not exempt under section 18(k) of the act, a consideration not relevant here.
Ind. Elec. Ass'n of N.J. merely upheld the constitutionality of the instant statute and had nothing whatever to do with the master and servant issue here involved. The Board cites it principally in support of the motivating objectives of safety with respect to supervision of electricians contemplated by the act. But the case is no authority whatever for bringing Joule within the term "electrical contractor" if he is not, as we hold. The same objective of safety by supervision might be said to apply to a developer-contractor who does electrical work in construction of homes owned by him and intended for resale, and that therefore he too is an "electrical contractor" within the meaning of the statute. But in Sands v. Bd. of Examiners of Electrical Contractors, 90 N.J. Super. 82 (App. Div. 1966), this court held that such a person was not an "electrical contractor." The court rested its decision on fundamental rules of statutory construction that words of a statute are to be given their ordinary meaning, and that such meaning is particularly important where the statute contains penal provisions, for it is not to be presumed that the Legislature intended punishment to extend further than expressly stated. In Sands the court held that it would not stretch the statutory language to cover the builder when he was not covered by it.
So here. We conclude that Joule was not an "electrical contractor" within the meaning of the statute, as decided by the Board. Its decision to that effect is reversed.
NOTES
[1] The Board later conceded that it had no power to assess such a penalty and that its right to recover a penalty was limited to institution of a civil action therefor. N.J.S.A. 45:5A-20. This question is not now material here.