J. L. QUERNER TRUCK LINES, INC., A CORPORATION, PLAINTIFF-RESPONDENT, v. SAFEWAY TRUCK LINES, INC., A CORPORATION, DEFENDANT-APPELLANT.

Argued September 13, 1961—Decided October 9, 1961.

*Mr. Joseph C. Paul* argued the cause for the defendant-appellant (*Mr. Henry M. Grosman,* attorney; *Mr. Joseph C. Paul,* of counsel and on the brief).

*Mr. Horace G. Davis* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

PROCTOR, J.　■　Plaintiff, J. L. Querner Truck Lines, Inc. (herein Querner) brought this action against Safeway Truck Lines, Inc. (herein Safeway) to recover property damages sustained by Querner's trailer when it was hauled by a tractor under a bridge with insufficient clearance. Querner contended that Safeway's agent, Salvato, negligently directed or permitted Lash, the driver of the tractor-trailer,

to so proceed. After the parties presented their evidence, the trial court granted Safeway's motion to dismiss, ruling that Querner failed to establish any agency relationship to bind Safeway and that Lash was conclusively guilty of contributory negligence. The Appellate Division reversed and remanded, finding that the agency and contributory negligence issues should have been resolved by the jury. 65 *N. J. Super.* 554 (1961). There being a dissent in the Appellate Division, Safeway's appeal is here as of right. *R. R.* 1:2–1(b).

Since the trial court ruled that the evidence did not present a jury question, we must view the facts of the entire case and legitimate inferences to be drawn therefrom in the light most favorable to Querner. *Melone v. Jersey Central Power & Light Co.,* 18 *N. J.* 163, 170 (1955).

The jury could have found the following facts: Querner, a lessor of trucks, leased the tractor-trailer with the services of its driver, Lash, to Safeway for the purpose of transporting a load of meat from New York to Chicago. Lash drove the tractor-trailer to Safeway's Weehawken terminal in Hudson County. Safeway's dispatcher, D'Amato, told Lash to drive the rig to a pier in New York City to pick up the load of meat and to return to the Weehawken terminal before proceeding to his ultimate destination. Lash, a Texan, had never been in Hudson County before and thus was unfamiliar with the route to the pier. Consequently, D'Amato did not give him the New York address but instead gave it to Salvato, an eighteen year old employee of Safeway, who sat in the cab beside Lash during the trip. Salvato's duties were two-fold: to help load the meat and to direct Lash along the route. In this latter capacity, D'Amato described Salvato as a "sight-man" whose duty was "to see that the truck got over to New York * * * and back to the * * * Terminal."

With Salvato showing the way, Lash drove the tractor-trailer from the Weehawken terminal to New York, loaded the meat onto the trailer and returned to the New Jersey

side of the Holland Tunnel without incident. Thereupon, Salvato told Lash to turn right, into Henderson Street, Jersey City. As the vehicle proceeded along Henderson Street, Salvato saw a sign which said, referring to a trestle one block ahead, "All Trucks Make A Left-Hand Turn. Low Bridge." The sign "was about five feet high * * * with the pole * * * [and] about two feet wide." Lash did not see the sign and Salvato neither called it to his attention nor warned him to turn. When Lash saw the trestle he asked Salvato if the trailer could clear or if he should turn off the street. Salvato assured Lash that it was safe to proceed "straight ahead," saying: "that he had been under the trestle before with trucks." The bridge proper was unmarked. The trailer (12'3" high) failed to clear the trestle by about a foot, resulting in the damage sued for.

Lash estimated his speed at the time of the impact at fifteen to twenty miles per hour. Although he had been driving tractor-trailers for seven years, Lash admitted he did not judge the comparative heights of the trailer and trestle "too well," but said this was due to his reliance on the assurances of Salvato.

Since Querner concedes that it is chargeable with the contributory negligence of Lash, if any, the issues to be determined are: (1) could a jury find Salvato guilty of negligence; (2) if so, could it impute that negligence to Safeway; and (3) was Lash guilty of contributory negligence as a matter of law.

■ With respect to the issue of Salvato's negligence, the jury could find: Salvato, knowing that Lash was a stranger to the territory, undertook to guide him on the trip; he knew, or should have known, that Lash would rely on his assertions that Henderson Street was a safe passageway for the tractor-trailer. Salvato's knowledge of the warning sign apprised him of the danger which lay ahead. Therefore, the jury might reasonably conclude that he acted negligently in assuring Lash that the latter could drive safely under the

trestle. One situated, as was Salvato, who gives to the driver assurances concerning road hazards, knowing that the driver will rely on the information, is under a duty to the driver to exercise reasonable care. See *DeRienzo v. Morristown Airport Corp.*, 28 *N. J.* 231 (1958). We think there was enough evidence to permit a jury to find Salvato negligent.

If Salvato was acting within the scope of his employment, his tortious acts are imputed to his employer. Salvato was instructed by D'Amato, Safeway's dispatcher, to travel with Lash, a known stranger to the area, and to act as "sight-man" on the journey. Although Salvato's duty as "sight-man" did not encompass control over the operation of the vehicle, the jury could find that he had authority to select and direct the route over which the vehicle was to travel. If so, the jury could also infer Salvato had authority to: (1) select a proper road for travel, one that was free from dangerous obstructions of which he was or should have been aware; and (2) respond to any questions Lash might ask regarding the safety of the route of travel. If the jury so found, Salvato's negligence, of course, would be imputed to Safeway.

Finally, we think the question of Lash's contributory negligence was also for the jury. We cannot say as a matter of law that Lash, as a reasonably prudent man, should have realized Salvato was wrong in assuring him the trailer would clear the trestle. Lash was a stranger in the vicinity and was receiving directions from a person professing knowledge of the road conditions. He knew that Safeway sent Salvato along to select the route. The fact that Salvato was eighteen years old does not necessarily make reliance upon him unreasonable. The jury could find such a person is mature enough to give proper road directions. Nor can we say that a driver must necessarily be able to gauge whether his vehicle could clear a trestle, unmarked as to clearance, where the trestle was one foot lower than his 12′ 3″ high trailer. See *Rapp v. Public Service Coordinated Transport, etc.*,

9 *N. J.* 11 (1952). Reasonable minds could also differ as to whether Lash was guilty of contributory negligence in failing to see the warning sign, placed as it was, or to slow or stop the vehicle and make certain of clearance notwithstanding Salvato's assurances. See *Kopec v. Kakowski,* 34 *N. J.* 243 (1961).

The Appellate Division opinion suggests a passenger can be held liable to others because of a failure to warn the driver. The issue, of course, is not involved in this case and our silence should not be deemed to be an acceptance of that proposition.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.