651 A.2d 1002

LINDA VOLB, ADMINISTRATRIX OF THE ESTATE OF CHARLES VOLB, DECEASED, AND LINDA VOLB, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR MATTHEW VOLB, CHARLES VOLB, AND ERIKA VOLB, MINORS, PLAINTIFFS–APPELLANTS, v. G.E. CAPITAL CORPORATION, J.H. REID CONSTRUCTION COMPANY, J.H. REID INDIVIDUALLY AND T/A J.H. REID CONSTRUCTION COMPANY, ABC COMPANY (A FICTITIOUS CORPORATION) AND JOHN DOES (FICTITIOUS PERSONS), INDIVIDUALLY AND T/A ABC COMPANY (A FICTITIOUS CORPORATION), DEFENDANTS, AND RONALD LEE AND T.D.E. SERVICES, INC., DEFENDANTS–RESPONDENTS.

Argued January 5, 1994—Decided January 24, 1995.

*Eric Ludwig* argued the cause for appellants (*Stark & Stark,* attorneys; *Mr. Ludwig,* of counsel; *Jodi F. Mindnich,* on the briefs).

*Gary L. Jakob* argued the cause for respondents (*Montano, Summers, Mullen, Manuel, Owens & Gregorio,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

The critical issue in this appeal concerns the immunity from tort liability of a general employer, T.D.E., for the alleged negligence of its employee, Ronald Lee, which occurred while the employee functioned as a special employee of J.H. Reid General Contractors, Inc. (J.H. Reid). The decedent, Charles Volb, was an employee of J.H. Reid at the time of the accident, and his widow, as administratrix, sought and recovered a workers' compensation award against J.H. Reid. The administratrix also instituted this tort action. The Law Division granted motions for summary judgment in favor of Lee and T.D.E., apparently on the assumption that both Lee, as Volb's co-worker, and T.D.E., as Lee's employer, were immunized from tort liability under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128. The Appellate Division affirmed in an unreported opinion. We reverse the summary judgment in favor of T.D.E., and hold that T.D.E. is not entitled to Workers' Compensation Act immunity from tort liability. We are unable definitively to ascertain whether or to what extent the Law Division's grant of summary judgment in favor of T.D.E. also may have been predicated on principles of *respondeat superior* liability. Accordingly, we remand the matter to the Law Division for consideration of that issue.

## I

On July 17, 1989, defendant Ronald Lee backed a dump truck over Charles Volb, causing Volb's death. The accident occurred at a construction site of J.H. Reid. Volb was employed by J.H. Reid; however, Lee was employed by T.D.E., an affiliate of J.H. Reid.

The same four principals own both J.H. Reid and T.D.E. They also own another affiliate of J.H. Reid called J.H. Reid General Construction Co., Inc., which is not involved in this case. The record informs us only generally that T.D.E. and J.H. Reid General Construction were organized because of J.H. Reid's labor-union relationships. Testimony elicited at depositions revealed that T.D.E.'s function was to employ workers from certain unions to perform construction work for J.H. Reid. Similarly, the function of J.H. Reid General Construction was to employ workers from other unions to perform construction work for J.H. Reid. We infer, however, from the generalized description of the two affiliates and their purpose that J.H. Reid was engaged in a form of the practice common to the construction industry known as "double breasting." ("Double breasting refers to the creation of two distinct operating entities, one governed by a collective bargaining agreement and one totally unencumbered by such an agreement. The single most universal characteristic of any double-breasted operation is common ownership of both the unionized and nonunionized companies by a central business entity." Joseph H. Bucci & Brian P. Kirwin, *Double Breasting in the Construction Industry*, 10 *Constr. Lawyer* 1 (Jan. 1990)). Because J.H. Reid's affiliates each hired workers from different unions, the inference is permissible that differences in J.H. Reid's relationships with various unions—building-trade and non-building-trade unions, for example—dictated the use of separate corporate entities to avoid conflicts that otherwise might arise.

Linda Volb filed a workers' compensation claim as administratrix of her deceased husband's estate. The compensation court entered an award against J.H. Reid. However, Mrs. Volb also

filed this tort claim against Lee and T.D.E.[1] Lee moved for summary judgment following the completion of discovery. In an oral opinion the trial court granted Lee's motion, basing its decision on J.H. Reid's control of Lee's activities on the day in question. The trial court later entered summary judgment in favor of T.D.E., without opinion. The Appellate Division in an unreported opinion affirmed both trial court judgments substantially for the reasons stated to support the grant of summary judgment in favor of Lee. We granted plaintiff's petition for certification, 134 *N.J.* 478, 634 *A.*2d 525 (1993).

## II

To the extent that the lower courts sustained the grant of summary judgment to T.D.E. on the basis of an employer's statutory immunity under the Workers' Compensation Act, that determination cannot be sustained. Although the lower courts' treatment of the immunity question was abbreviated, the opinions below imply that T.D.E.'s immunity was based on the premise that Lee, as the special employee of J.H. Reid, was statutorily immune from tort liability and that that immunity necessarily encompassed his employer, T.D.E. An alternative theory of tort immunity not addressed by the lower courts might be based on a contention that the statutory immunity of J.H. Reid, Volb's employer, should be expanded to include J.H. Reid's subsidiary and affiliate companies. Neither theory of immunity, however, finds support in the case law.

---

[1] Mrs. Volb also sued J.H. Reid individually, the "J.H. Reid Construction Company," and G.E. Capital Corporation, which had leased the dump truck to J.H. Reid General Contractors. The trial court granted summary judgment in favor of "J.H. Reid Construction Company" because it had paid the workers' compensation claim. Although no company involved in this case is actually called "J.H. Reid Construction Company," because the court granted summary judgment on the basis of the exclusive-remedy defense, the company at issue is presumably Volb's employer, J.H. Reid General Contractors, which paid the workers' compensation award to Volb's estate. The court dismissed the suit against G.E. Capital Corporation with prejudice. Apparently the suit against J.H. Reid personally was never pursued.

A

We first address whether T.D.E. is entitled to tort immunity based on Lee's status as a special employee of J.H. Reid. New Jersey has developed its special-employee doctrine by adopting the three-prong test recommended by Professor Larson for establishing a special-employment relationship:

Whether the common law [tort] action is precluded [by the borrowed-employee doctrine] is * * * dependent upon a determination that the borrower of an employee is, in fact, a special employer. Professor Larson * * * lays down a three-pronged test in order to establish employment within the terms of the [Workers' Compensation] [A]ct:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:

(a) The employee has made a contract of hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation."

\* \* \* \* \* \* \* \*

There is no uniform agreement as to a predominant factor. The sheer weight of authority is undoubtedly on the side of "control." * * * The federal authorities * * * are uniform that the "ultimate test is: Whose is the work being done? * * * In determining whose work is being done, the question of the power to control the work is of great importance * * *."

[*Blessing v. T. Shriver & Co.*, 94 *N.J.Super.* 426, 430–31, 228 *A.*2d 711 (App.Div. 1967) (citations and footnote omitted) (last two omissions in original) (quoting 1A Arthur Larson, *Workmen's Compensation* § 48.00, at 710 (1966), and *Jones v. George F. Getty Oil Co.*, 92 *F.*2d 255, 263 (10th Cir.1937), *cert. denied*, 303 *U.S.* 644, 58 *S.Ct.* 644, 82 *L.Ed.* 1106 (1938)).]

 Because the most important factor in determining a special employee's status is whether the borrowing employer had the right to control the special employee's work, the trial court plainly was correct in concluding that Lee was a special employee of J.H. Reid. It based that finding on the fact that a regular employee of J.H. Reid directly supervised the job site on which Lee ran over Volb. Indeed, that supervisor was the person who told Lee to back the dump truck down the detour road on which

Volb was checking grades. Because J.H. Reid, as the borrowing employer, controlled Lee's work, Lee was a special employee of J.H. Reid.

Lee's status as a special employee of J.H. Reid compels the conclusion that Volb's estate cannot sue Lee. By definition, a special employee is an employee of the borrowing employer. As a result, the fellow-employee immunity provided by the Workers' Compensation Act bars a suit by a regular employee of the borrowing employer against the special employee. *N.J.S.A.* 34:15–8 provides in pertinent part that

> [i]f an injury or death is compensable under [the Workers' Compensation Act], a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

In short, co-workers cannot sue one another for negligence in the workplace. Thus, the Workers' Compensation Act prohibits the Volb estate's suit against Lee because Volb was a regular employee of J.H. Reid and Lee was a special employee of J.H. Reid.

The determination that Lee is immune from suit by Volb's estate, however, does not establish that Lee's employer, T.D.E., also is entitled to statutory immunity from tort liability. In sustaining the grant of summary judgment in favor of Lee and T.D.E., the lower courts both relied on *Antheunisse v. Tiffany & Co.*, 229 *N.J.Super.* 399, 551 *A.*2d 1006 (App.Div.1988), *certif. denied*, 115 *N.J.* 59, 556 *A.*2d 1206 (1989), and *Santos v. Standard Havens, Inc.*, 225 *N.J.Super.* 16, 541 *A.*2d 708 (App.Div.1988). Those cases involved plaintiffs who had been loaned by their general employers to perform services for the respective defendants, and set forth the principles that establish a special employment relationship. In each case the court determined that the plaintiff, who had received workers compensation benefits from his general employer, had functioned as a special employee of the defendant, thereby entitling the defendants to Workers' Compensation Act immunity. 229 *N.J.Super.* at 405, 551 *A.*2d 1006; 225 *N.J.Super.* at 22, 541 *A.*2d 708. Those decisions would be controlling if the issue before us concerned the immunity of J.H. Reid to

a tort claim asserted by Lee, its special employee, but they do not resolve T.D.E.'s immunity concerning the tort claim asserted by Volb's administratrix against it, inasmuch as Volb had no employment relationship with T.D.E.

■ The Workers' Compensation Act does not bar either directly or indirectly the Volb estate's suit against T.D.E. T.D.E. cannot assert as a defense that Volb's exclusive remedy is workers' compensation, because Volb was neither a regular T.D.E. employee nor a special T.D.E. employee. As a result, the employer immunity of *N.J.S.A.* 34:15–8 does not prohibit directly the Volb estate's suit against T.D.E.

■ The Act also does not indirectly bar plaintiff's suit by deriving immunity for T.D.E. from Lee's fellow-employee immunity. That the statute immunizes Lee from liability for torts committed against special co-workers such as Volb does not mean that the statute similarly immunizes Lee's employer from such liability. The Appellate Division has described the legislative purpose of the fellow-employee tort immunity provided under the Workers' Compensation Act:

> The continued subsistence of a cause of action in tort against a fellow-employee has come under considerable public criticism in recent years. It has frequently resulted in burdening the employer indirectly with common-law damages superimposed upon his workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued director, officer or supervisory employee, or with the expense of carrying insurance to cover the personal liability of such supervisory personnel. Recognizing that such consequences conflict with the general scheme of the Workmen's Compensation Act, the Legislature * * * amended the act (*R.S.* 34:15–8) expressly to preclude a right of recovery on account of a compensable injury or death at common law or otherwise against a fellow-employee except in cases of intentional wrong.
>
> [*Miller v. Muscarelle,* 67 *N.J.Super.* 305, 321, 170 *A.*2d 437, *certif. denied,* 36 *N.J.* 140, 174 *A.*2d 925 (1961) (citations omitted).]

That legislative policy does not extend Lee's fellow-employee immunity to T.D.E. T.D.E. has not paid workers' compensation benefits to Volb's estate, because T.D.E. did not employ Volb. Thus, imposing vicarious liability on T.D.E. for the negligent act Lee committed while acting within the scope of his employment by

T.D.E. is not unfair, because any resulting tort judgment will be the only sum paid by T.D.E. to Volb's family. Such liability also will not undermine T.D.E.'s right to choose workers' compensation as an exclusive remedy for its employees' work-related injuries, again because Volb was never an employee of T.D.E.

Although the precise question appears to be one of first impression in this state, the out-of-state authorities uniformly hold that the immunity of a special employee to a tort action brought by an employee of the special employer does not inure to the benefit of the general employer. For example, in *Campbell v. Harris–Seybold Press Co.*, 73 *Cal.App.*3d 786, 141 *Cal.Rptr.* 55 (1977), the plaintiff, a press operator employed by a printing company, allegedly sustained serious injuries because of the negligence of the defendant, Adam, who had been assigned by the other defendant, Harris–Seybold Press Co. (Harris–Seybold), to assist the plaintiff and his employer in the restoration of a printing press. The jury was instructed that if it determined that Adam was a special employee of plaintiff's employer, both Adam and Harris–Seybold were immune from tort liability. The trial court entered a judgment for both defendants based on a jury finding that Adam had been the special employee of plaintiff's employer. The Court of Appeal reversed, concluding that its employee's immunity did not extend to Harris–Seybold:

> But, Harris contends, if its liability stems from the operation of respondeat superior, then if Adam is immune, Harris must likewise be immune. While negligence and immunity may, of course, reside in the same party simultaneously, it does not necessarily follow that a principal must enjoy the immunity of his agent. * * * In the instant case, assuming that section 3601 precludes plaintiff from maintaining an action against Adam, Harris could not avail itself of Adam's defense under section 3601 to escape liability because that defense does not go to the merits of plaintiff's cause of action. The defense of section 3601 being personal to Adam, it would not inure to the benefit of Harris. In short, while Adam's negligence may be imputed to Harris, Adam's status as a special employee of World would not immunize Harris. Thus, if the elements of respondeat superior are satisfied, Harris may be adjudged liable for Adam's negligent conduct.

> The soundness of this result is buttressed by the rationale underlying the doctrine of respondeat superior that the employer's liability includes risks created by or inherent in the enterprise because it rather than the injured party is best able to spread the risk of loss. If Harris were permitted to invoke the immunity of

> Adam, it would escape responsibility for the risks incident to the conduct of its business without at the same time conferring any reciprocal benefit to the workers' compensation scheme. Such a result is neither fair nor necessary.
>
> [141 *Cal.Rptr.* at 58–59 (citations omitted).]

In *Marsh v. Tilley Steel Co.*, 26 *Cal.*3d 486, 162 *Cal.Rptr.* 320, 606 *P.*2d 355 (1980), the Supreme Court of California confronted the identical issue in the context of a tort claim asserted by an employee of a general concrete contractor, who sustained injuries when the defendant's employee, on loan to the plaintiff's employer, negligently operated a truck-mounted crane. The court acknowledged that on remand a jury could find "dual employment" status, which would result in the imposition of liability on the defendant for its employee's negligence. The court, however, rejected the defendant's contention that if its employee was determined to be the special employee of the plaintiff's employer, the defendant would also be entitled to the benefit of its employee's workers' compensation law immunity. Relying on the reasoning of *Campbell, supra,* 141 *Cal.Rptr.* 55, the court concluded that the employee's immunity was personal and did not absolve defendant from tort liability:

> The reasoning of *Campbell* is sound. Where the tortfeasor is not the plaintiff's employer or coemployee, the statutes by necessary implication reserve for plaintiff his tortious remedy against defendant. Moreover, general respondeat superior principles seek to place the cost of work-related negligence on those enterprises the actions of which have produced the negligence risk. This policy would be defeated by extending to an employer the benefit of a technical defense reserved solely for the employee. As *Campbell* noted, a defendant has no workers' compensation responsibility to a plaintiff who is not its employee. Accordingly, defendant's argument would relieve defendant from its normal respondeat superior liability, while at the same time giving no accompanying benefit to the workers' compensation system.
>
> [162 *Cal.Rptr.* at 326, 606 *P.*2d at 361 (citation omitted).]

*See also Bright v. Cargill, Inc.*, 251 *Kan.* 387, 837 *P.*2d 348, 368 (1992) ("LSI had no workers compensation liability for Bright's injuries and should not be shielded from common-law liability. If Nanny is deemed to be the employee of Cargill, the immunity granted to Nanny ... is personal to Nanny and does not immunize LSI from its vicarious liability for Nanny's negligence."); *Kenyon v. Second Precinct Lounge*, 177 *Mich.App.* 492, 442

*N.W.*2d 696, 701 (1989) ("[T]he immunity granted by the workers' compensation act is personal and does not purport to grant derivative immunity to general employers in the position of ETS. * * * To grant ETS derivative immunity would effectively shield it from all liability * * * without obtaining any accompanying benefit to the workers' compensation system."); *accord Cuffe v. Sanders Constr. Co.*, 748 *P.*2d 328, 332 n. 9 (Alaska 1988); *Kral v. Patrico's Transit Mixing Co.*, 181 *Mich.App.* 226, 448 *N.W.*2d 790, 793–94 (1989).

Although the precise question has not been addressed directly in this state, the uniform holding of the out-of-state cases is entirely consistent with general agency principles familiar to our case law. Thus, "a principal 'may be liable for an act as to which the agent has a personal immunity from suit.'" *Gardner v. Rosecliff Realty Co.*, 41 *N.J.Super.* 1, 7, 124 *A.*2d 30 (App.Div. 1956) (quoting *Restatement of Agency* § 217(2) (1933)). As section 217(b) of the *Restatement (Second) of Agency* (1957) currently puts it, "The principal has no defense because of the fact that * * * the agent had an immunity from civil liability as to the act." One treatise has explained that "[i]n the case of the immunity, liability has been cut off (against the servant) in a situation where it would ordinarily be afforded under general tort principles, for a reason that simply does not apply to the master." 2 Fowler V. Harper and Fleming James, Jr., *The Law of Torts* § 26.17, at 1426 (1956). In short, the Workers' Compensation Act does not indirectly bar the Volb estate's suit against T.D.E., because Lee's fellow-employee immunity does not extend to his employer.

## B

The case law persuasively demonstrates that T.D.E. cannot claim tort immunity derivatively on the basis of its employee Lee's Workers' Compensation Act immunity. Nor is T.D.E. entitled to tort immunity based solely on its affiliate relationship with J.H. Reid, Volb's employer. As noted *supra* at 114, 651 *A.*2d at 1003, the stockholders of J.H. Reid also owned the stock of two affiliated

corporations, J.H. Reid Construction Co., Inc. and T.D.E. Nevertheless, in suits brought by an injured employee against corporations that are parents, subsidiaries, or affiliates of the plaintiff's employer, the general rule consistently applied by federal and state courts has been to deny workers' compensation immunity on the ground that the separate corporate identity of affiliated corporations should not be disregarded. *Boggs v. Blue Diamond Coal Co.,* 590 *F.*2d 655 (6th Cir.), *cert. denied,* 444 *U.S.* 836, 100 *S.Ct.* 71, 62 *L.Ed.*2d 47 (1979), is characteristic of the cases that have denied immunity. The widows of coal miners killed when methane gas exploded in a mine operated by the Scotia Coal Company, a wholly-owned subsidiary of the defendant, Blue Diamond Coal Co. (Blue Diamond), instituted a wrongful-death action against Blue Diamond based on alleged acts of negligence separate from the subsidiary's conduct. Blue Diamond successfully moved for summary judgment, claiming immunity under the Kentucky Workmen's Compensation Act on the ground that it and the operating subsidiary should be regarded as a single or joint "employer" because they were engaged in the production of coal as part of an integrated business. Reversing, the court of appeals held that under Kentucky law a parent is not immune from tort liability to its subsidiary's employees for its own negligence even though the employees are entitled to receive workers' compensation benefits from the subsidiary. The court of appeals reasoned that

> [t]hese cases are based on the traditional view that a business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee.
>
> [590 *F.*2d at 662.]

As the Supreme Court of Wyoming observed in *Fiscus v. Atlantic Richfield Co.,* 742 *P.*2d 198 (1987), "When faced with similar issues involving parent and subsidiary corporations, a majority of courts have refused to disturb the corporate distinction between parent and subsidiary." *Id.* at 201. *See, e.g., First Nat'l Bank of Camden v. Tracor, Inc.,* 851 *F.*2d 212, 214 (8th Cir.1988);

*Dorden v. C.H. Heist Corp.*, 743 *F*.2d 1135, 1139 (5th Cir.1984); *Love v. Flour Mills of Am.*, 647 *F*.2d 1058, 1062 (10th Cir.1981); *Lane v. Kingsport Armature & Elec.*, 676 *F.Supp.* 108, 111 (D.Va.1988); *Gaines v. Excel Indus., Inc.*, 667 *F.Supp.* 569, 574–77 (M.D.Tenn.1987); *Peterson v. Trailways, Inc.*, 555 *F.Supp.* 827, 832–33 (D.Colo.1983); *Stoddard v. Ling–Temco–Vought, Inc.*, 513 *F.Supp.* 314, 325–26 (C.D.Ca.1980); *In re Johns–Manville/Asbestosis Cases*, 511 *F.Supp.* 1229, 1234 (N.D.Ill.1981); *McDaniel v. Johns–Manville Sales Corp.*, 487 *F.Supp.* 714, 716 (N.D.Ill.1978); *Choate v. Landis Tool Co.*, 486 *F.Supp.* 774, 780–81 (E.D.Mich. 1980); *O'Brien v. Grumman Corp.*, 475 *F.Supp.* 284, 292 (S.D.N.Y.1979); *Latham v. Technar, Inc.*, 390 *F.Supp.* 1031, 1037–38 (E.D.Tenn.1974); *Shields v. County of San Diego*, 155 *Cal. App.*3d 103, 202 *Cal.Rptr.* 30, 35–36 (1984); *Gigax v. Ralston Purina Co.*, 136 *Cal.App.*3d 591, 186 *Cal.Rptr.* 395, 401–05 (1982); *Gulfstream Land & Dev. Corp. v. Wilkerson*, 420 *So.*2d 587, 589–90 (Fla.1982); *Searcy v. Paul*, 20 *Mass.App.Ct.* 134, 478 *N.E.*2d 1275, 1279 (1985); *Bernardo v. Melville Indus. Assocs.*, 148 *A.D.*2d 486, 538 *N.Y.S.*2d 833, 834–35 (1989); *Buchner v. Pines Hotel, Inc.*, 87 *A.D.*2d 691, 448 *N.Y.S.*2d 870, 871–72 (1982), *aff'd*, 58 *N.Y.*2d 1019, 462 *N.Y.S.*2d 436, 437, 448 *N.E.*2d 1347 (1983); *Samaras v. Gatx Leasing Corp.*, 75 *A.D.*2d 890, 428 *N.Y.S.*2d 48, 49 (1980); *Hearn v. Petra Int'l Corp.*, 710 *P.*2d 769, 770–71 (Okla.Ct.App.1985); *Kiehl v. Action Mfg. Co.*, 517 *Pa.* 183, 535 *A.*2d 571, 574–75 (1987).

The contrary view adopted by a minority of courts is that if the employer subsidiary corporation is effectively the *alter ego* of the parent to the extent that the companies constitute a single, indistinguishable economic entity, the corporate parent may be immunized from a claim of tort liability asserted by the subsidiary's employee. *See, e.g., Harvey v. Fine Prods. Co.*, 156 *Ga.App.* 649, 275 *S.E.*2d 732, 733 (1980); *Nichols v. Uniroyal, Inc.*, 399 *So.*2d 751, 752–53 (La.Ct.App.1981); *Coco v. Winston Indus., Inc.*, 330 *So.*2d 649, 653–55 (La.Ct.App.), *modified on other grounds*, 341 *So.*2d 332 (La.1976); *Wells v. Firestone Tire & Rubber Co.*, 421 *Mich.* 641, 364 *N.W.*2d 670, 674–75 (1984); *Verhaar v. Con-*

sumers Power Co., 179 Mich.App. 506, 446 N.W.2d 299, 300–01 (1989); Andriacchi v. Cleveland Cliffs Iron Co., 174 Mich.App. 600, 436 N.W.2d 707, 709–11 (1989); Rasnick v. Pittston Co., 237 Va. 658, 379 S.E.2d 353, 354–56 (1989).

The cases uniformly deny immunity, however, if the employee seeks to recover in tort against a subsidiary or corporate affiliate of the employer, as distinguished from the employer's parent. See 2A Larson, Workmen's Compensation Law, § 72.40 at 14–228.30 (1990 ed.). For example, in Wodogaza v. H & R Terminals, Inc., 161 Mich.App. 746, 411 N.W.2d 848 (1987), the plaintiff, an employee of Preston Trucking Company, sustained injuries when a forklift he was operating turned over because of the conduct of a co-worker who was driving a tractor. The tractor was owned by S & P Equipment, Inc., and the accident occurred on premises owned by H & R Terminals, Inc., both wholly-owned subsidiaries of plaintiff's employer. The plaintiff recovered workers' compensation benefits from his employer and subsequently sued both subsidiaries in tort, alleging that H & R had negligently maintained its premises and that S & P was statutorily liable as the owner of the tractor that had caused the plaintiff's injuries. Reversing the trial court's grant of summary judgment based on workers' compensation immunity, the Michigan Court of Appeals observed:

> Most significantly, the subsidiaries in this case are seeking to shield themselves from tort liability without having assumed any concomitant liability for the payment of workers' compensation benefits. Defendants have never accepted any responsibility for the work-related injuries of their parent's employees. Second, as noted by the majority in Wells, the general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. In the present case, defendants point to no injustice resulting from our recognition of their nonemployer status, as determined under an economic reality test analysis. Liability alone constitutes no such injustice. Indeed, if negligence on the part of one or both of the nonemployer subsidiaries in this case brought about plaintiff's injuries, injustice would result by failing to permit plaintiff to seek compensation against the proper tortfeasor or tortfeasors.
>
> [411 N.W.2d at 852.]

The holding in Wodogaza reflects the view of virtually all the courts that have considered whether a subsidiary or affiliate

corporation is immune from a tort claim asserted by the employee of a parent or affiliate corporation. *See, e.g., Joyce v. Super Fresh Food Markets, Inc.,* 815 *F.*2d 943, 946–49 (3d Cir.1987); *Monroe v. Monsanto Co.,* 531 *F.Supp.* 426, 431–33 (D.S.C.1982); *Thomas v. Hycon, Inc.,* 244 *F.Supp.* 151, 154–56 (D.D.C.1965); *Gaber v. Franchise Servs., Inc.,* 680 *P.*2d 1345, 1346–47 (Colo.Ct.App.1984); *Nutt v. Pierce Waste Oil Serv., Inc.,* 112 *Ill.App.*3d 612, 68 *Ill.Dec.* 284, 285–87, 445 *N.E.*2d 928, 929–31 (1983); *Smith v. Cotton's Fleet Serv., Inc.,* 500 *So.*2d 759, 761–63 (La.1987); *Dolan v. Kent Research & Mfg. Co.,* 63 *Md.App.* 55, 491 *A.*2d 1226, 1231–32, *cert. denied,* 304 *Md.* 298, 498 *A.*2d 1185 (1985); *Belen v. Dawson,* 52 *Mich.App.* 670, 217 *N.W.*2d 910, 911–12 (1974).

Only two New Jersey cases have addressed the question of workers' compensation immunity based solely on corporate affiliation, and in both cases the courts denied immunity. In *Vernon v. Supermarket Services Corp.,* 250 *N.J.Super.* 8, 593 *A.*2d 345 (App.Div.1991), the plaintiff, an employee of Supermarket Distribution Services (SDS), allegedly was injured because of the negligence of employees of Supermarket Services Corporation (SSC). Both SDS and SSC were wholly-owned subsidiaries of the Great Atlantic & Pacific Tea Company (A & P). After the plaintiff had filed a workers' compensation claim against A & P and had received an award, he instituted a tort action against SSC based on the negligence of its employees. The Law Division granted summary judgment to SSC, concluding that as A & P's subsidiary it was entitled to Workers' Compensation Act immunity. Reversing, the Appellate Division concluded:

> The facades created by incorporation cannot be transgressed to allow sister corporate subsidiaries of the same corporate parent to enjoy the *N.J.S.A.* 34:15–8 immunity vested in only one of the subsidiaries. Each corporation is a separate entity. The respective incorporators chose the corporation as a form for doing business. Those incorporators or their successors, while entitled to the benefits that flow from incorporation, must also accept the burdens that flow from the use of the corporate structure. One of the burdens to be accepted is that a corporation may not share the immunity *N.J.S.A.* 34:15–8 provides to a sister subsidiary corporation.

[*Id.* at 10, 593 *A.*2d 345 (citation omitted).]

Similarly, in *Mingin v. Continental Can Co.*, 171 *N.J.Super.* 148, 408 *A.*2d 146 (Law Div.1979), the plaintiff sustained injuries while operating a machine manufactured by Urbana Tool and Die Company (Urbana). After receiving worker's compensation benefits from his employer, Crest Container Corporation, the plaintiff sued Urbana and Continental Can Company, the parent of both Crest and Urbana. Both defendants sought summary judgment, contending that they were entitled to Workers' Compensation Act immunity on the basis of their affiliation with the plaintiff's employer. Relying on *Boggs, supra,* 590 *F.*2d 655, the Law Division concluded that the defendants' separate corporate identities should not be disregarded and that workers' compensation immunity did not bar the plaintiff's cause of action. 171 *N.J.Super.* at 150–52, 408 *A.*2d 146.

The clear weight of authority throughout the country supports the view that corporations affiliated by stock ownership and common management with a worker's employer are not entitled to the tort immunity specifically accorded by statute to the employer only. Intuition might suggest that a broader immunity would be consistent with the underlying objectives of workers' compensation legislation, and the Legislature is at liberty to enact a more comprehensive, enterprise-based immunity. Nevertheless, we have no doubt that companies that elect for sound business considerations to operate their enterprise by using multiple affiliated corporations anticipate the risk of intra-corporate tort liability and therefore purchase liability insurance to offset that risk. Presumably, the decision to operate through interlocking corporations reflects the pragmatic determination that the specific advantages derived from the multi-corporate enterprise outweigh the risk of tort liability that that form of enterprise entails. Neither legislative history, precedent, nor public policy suggests that this Court should second-guess the reasonableness of such a business decision. Accordingly, in the context of the inter-corporate relationship between J.H. Reid and T.D.E., no justification exists for extending J.H. Reid's Workers' Compensation Act immunity to insulate T.D.E. from plaintiff's tort action.

## III

Because T.D.E. is not entitled to Workers' Compensation Act immunity, the question remains whether T.D.E. may be held liable in tort under the doctrine of *respondeat superior* in the event of a jury determination that Lee's negligence was a proximate cause of Volb's death. As noted *supra* at 113, 651 *A*.2d at 1003, we are uncertain whether or to what extent the trial court considered principles of *respondeat superior* liability in granting summary judgment in favor of T.D.E. T.D.E.'s motion for summary judgment was granted on briefs without argument, and no opinion was rendered by the trial court. On remand, the trial court may address that issue prior to trial. We leave to the sound discretion of the trial court whether to grant applications by the parties for additional discovery, if necessary, concerning the specific business reasons for the separate incorporation of T.D.E. and J.H. Reid Construction Company, and the functions performed by those companies in relation to the business of J.H. Reid. We imply no view on the issue of T.D.E.'s liability under *respondeat superior*, but for the guidance of the trial court we review the pertinent authorities.

Courts throughout the country are divided over the standard to be applied in determining *respondeat superior* liability of a general employer that is based on the alleged negligence of an employee loaned to a special employer. The traditional "borrowed servant" doctrine determines *respondeat superior* liability on the basis of whether the general or special employer "controlled" the loaned employee. *See, e.g., Coleman v. Steel City Crane Rentals, Inc.,* 475 *So.*2d 498 (Ala.1985), *cert. denied,* 476 *U.S.* 1104, 106 *S.Ct.* 1946, 90 *L.Ed.*2d 356 (1986); *Hoffman v. Wells,* 260 *Ga.* 588, 397 *S.E.*2d 696 (1990); *Nakagawa v. Apana,* 52 *Haw.* 379, 477 *P.*2d 611 (1970); *Mainella v. Staff Builders Indus. Servs., Inc.,* 608 *A.*2d 1141 (R.I.1992); *see also DePratt v. Sergio,* 102 *Wis.*2d 141, 306 *N.W.*2d 62, 64 (1981) ("[T]he borrowed servant rule is premised on the concept that the master who has control over the servant and derives benefit from the servant should be exclusively

liable for the negligent acts of the loaned servant."). However, the "control" test for determining *respondeat superior* liability in borrowed servant cases has been criticized. *See, e.g.,* Harper & James, *supra,* § 26.11, at 1398 n. 14 ("The tests currently in vogue turn on the question of control of the borrowed servant and [on] whose business is being done by him. The trouble with these tests is that commonly both employers have a measure of control and the business of both is being done."); Note, *Borrowed Servants and the Theory of Enterprise Liability,* 76 *Yale L.J.* 807, 811 (1967) ("As applied, the control test makes little sense either for the borrowed servant problem or for *respondeat superior.*").

Some courts have adopted a dual-liability approach, reflecting the view that because the borrowed servant is engaged in the business of both the general and special employers, both employers could be liable to third parties injured by the borrowed employee's negligence. *See Vance Trucking Co. v. Canal Ins. Co.,* 249 *F.Supp.* 33, 38 (D.S.C.1966), *aff'd,* 395 *F.*2d 391 (4th Cir.), *cert. denied,* 393 *U.S.* 845, 89 *S.Ct.* 129, 21 *L.Ed.*2d 116 (1968); *Kastner v. Toombs,* 611 *P.*2d 62, 65–66 (Alaska 1980); *Marsh, supra,* 26 *Cal.*3d 486,. 162 *Cal.Rptr.* 320, 325, 606 *P.*2d 355, 360 (1980); *Bright, supra,* 251 *Kan.* 387, 837 *P.*2d 348, 362–64 (1992); *City of Somerset v. Hart,* 549 *S.W.*2d 814, 816–17 (Ky.1977); *LeJeune v. Allstate Ins. Co.,* 365 *So.*2d 471, 479–82 (La.1978); *Keitz v. National Paving & Contracting Co.,* 214 *Md.* 479, 136 *A.*2d 229, 231 (1957); *Kenyon, supra,* 177 *Mich.App.* 492, 442 *N.W.*2d 696, 702 (1989); *Brickner v. Normandy Osteopathic Hosp., Inc.,* 746 *S.W.*2d 108, 113 (Mo.Ct.App.1988); *Gordon v. S.M. Byers Motor Car Co.,* 309 *Pa.* 453, 164 *A.* 334, 336 (1932). Other authorities also have endorsed the dual-liability approach. See Floyd R. Mechem, *Outlines of the Law of Agency,* § 458 (4th ed. 1952) (describing dual-liability approach as "simple and practical"); *Restatement (Second) of Agency* § 227 cmt. b. (1957) ("In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service

rendered another, he is performing the business entrusted to him by the general employer.").

Although this Court has not recently addressed the standard for determining *respondeat superior* liability in borrowed-servant cases, some New Jersey cases have imposed liability on the general employer because the loaned employee was furthering the general employer's business interests when the tort occurred. *See Viggiano v. William C. Reppenhagen, Inc.*, 55 *N.J.Super.* 114, 118–20, 150 *A.2d* 40 (App.Div.1959). The development of New Jersey's borrowed servant doctrine can be traced from *Younkers v. County of Ocean*, 130 *N.J.L.* 607, 33 *A.2d* 898 (E. & A.1943). The plaintiff, a laborer employed by the Borough of Pine Beach, was injured by a road grader owned by Ocean County and operated by one of the County's employees. Pine Beach had rented the road grader, paid the operator based on his hourly-wage rate, and supervised the work. On appeal from a judgment entered on a jury verdict against Ocean County, the Court of Errors and Appeals concluded that the evidence raised a jury question whether the operator of the road grader had been Ocean County's employee for purposes of *respondeat superior* liability:

"In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

[130 *N.J.L.* at 610, 33 *A.2d* 898 (quoting *Restatement of Agency* § 227, cmt. (b) (1933)).]

In *Devone v. Newark Tidewater Terminal, Inc.*, 14 *N.J.Super.* 401, 82 *A.2d* 425 (App.Div.1951), the plaintiff's employer had rented an engine, engineer, and crew from the defendant to move freight cars, and the plaintiff allegedly sustained injuries due to the negligence of the crew engineer. Reversing a jury verdict for the defendant, the Appellate Division majority applied the traditional "control" test for determining liability, but found error in the trial court's failure to instruct the jury that the defendant remained liable for the engineer's negligence unless the plaintiff's employer controlled the manner in which the engineer operated

the engine. 14 *N.J.Super.* at 406, 82 *A.2d* 425. Concurring, former Justice (then Judge) Schettino criticized the "control" test, advocated the principle of dual liability, and asserted that the general employer should be liable whenever "the employee's negligence [was] committed while he was acting in furtherance of his general employer's interests." *Id.* at 414, 82 *A.2d* 425. In Justice Schettino's view:

> [I]f the causative act was within the service which the general employer agreed to furnish, he is responsible with respect to that act, no matter who directed its performance and without regard to the concurrent liability which may exist on the part of the one who issued the immediate order that the act be done.
>
> [*Id.* at 415, 82 *A.2d* 425.]

This Court last considered the question of *respondeat superior* liability based on a borrowed-servant relationship in *Larocca v. American Chain & Cable Co.,* 13 *N.J.* 1, 97 *A.2d* 680 (1953). The plaintiff's employer rented from the defendant Ench a crane and its operator to raise roof trusses into position, and the plaintiff was injured in the course of the operation of the crane. The trial court granted Ench's motion to dismiss on the basis of a lack of evidence demonstrating that the crane operator had been Ench's employee at the time of the accident, Ench having argued that the crane operator was controlled by the plaintiff's employer. Affirming the Appellate Division's reinstatement of the plaintiff's cause of action against Ench, this Court reaffirmed the principle endorsed by the Court of Errors and Appeals in *Younkers, supra,* that " ' "there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer." ' " 13 *N.J.* at 6, 97 *A.2d* 680 (quoting *Younkers, supra,* 130 *N.J.L.* at 610, 33 *A.*2d 898 (quoting *Restatement of Agency* § 227 cmt. (b) (1933))).

A leading case in New Jersey's borrowed-servant jurisprudence is *Viggiano, supra,* 55 *N.J.Super.* 114, 150 *A.*2d 40, which involved a claim for personal injuries caused by the negligence of the driver of a dump truck that had been leased by the plaintiff's employer in connection with the construction of a utility plant. The trial court dismissed the action · against the dump-truck driver's general

employer on the ground that the evidence would not have sustained a jury determination that the general employer controlled the driver's actions at the time of the accident. Reversing, the Appellate Division adopted the reasoning of former Justice Schettino in *Devone, supra,* holding that the general employer remained liable if the loaned employee was furthering its interests at the time of the tort:

> As pointed out by Judge Schettino, the special employer (rentee of the equipment and operator) may ... make himself *solely* liable by directing the employee to do an act beyond the service contracted for. (14 *N.J.Super.,* at 415, 82 *A.*2d 425). But as long as the work being done is within the general contemplation of the supplier of the equipment and operator, its performance is furthering the interest of the general employer in the sense that it is carrying out the latter's contractual obligation. This is not less so because the operator is following directions of the so-called special employer in respect to work details. That such direction would or might occur is in the contemplation of the contracting parties. [55 *N.J.Super.* at 118–19, 150 *A.*2d 40.]

*See also Martin v. Perth Amboy Gen. Hosp.,* 104 *N.J.Super.* 335, 348, 250 *A.*2d 40 (App.Div.1969) (adopting dual liability principle in reliance on concurring opinion in *Devone, supra,* and holding both surgeon and hospital liable for nurses' negligence in miscounting laparotomy pads during abdominal surgery); *J.L. Querner Truck Lines, Inc. v. Safeway Truck Lines, Inc.,* 65 *N.J.Super.* 554, 561, 168 *A.*2d 216 (App.Div.) (relying on *Viggiano, supra,* and holding that "in determining liability to third persons on the basis of *respondeat superior* the control exercised by the special employer is not dispositive. The crucial issue is whether the employee was furthering the interests of his general employer."), *aff'd,* 35 *N.J.* 564, 174 *A.*2d 201 (1961).

In *Cross v. Robert E. Lamb, Inc.,* 60 *N.J.Super.* 53, 158 *A.*2d 359 (App.Div.), *certif. denied,* 32 *N.J.* 350, 160 *A.*2d 847 (1960), the plaintiff, an employee of the plumbing and heating subcontractor on an office-building project, sustained injuries when an outdoor hoist was negligently operated by an employee of the general contractor. At the time of the injury, the hoist was being used to lift a large iron pipe required in connection with the plumbing subcontract. The general contractor appealed from a judgment on a jury verdict against it, contending that the hoist operator was

the special employee of the plumbing subcontractor at the time of the accident. In affirming the liability judgment against the general contractor, Judge Conford observed:

> The law relating to the subject matter of the present discussion has taken definitive shape since the concurring opinion of Judge (now Justice) Schettino in *Devone v. Newark Tidewater Terminal, Inc.*, 14 *N.J.Super.* 401, 406–419 [82 *A.*2d 425] (App.Div.1951), the philosophy of which was recently followed by us in *Viggiano v. William C. Reppenhagen, Inc.*, 55 *N.J.Super.* 114, 118–119 [150 *A.*2d 40] (App.Div.1959). * * *
>
> * * *
>
> * * * Notwithstanding Lamb's letting Truskey have the use of its equipment and West's services in operating it for a fixed hourly charge, the work West was doing in lifting pipe on the cable was nevertheless within Lamb's general contemplation, and this none the less because the work required West to follow signals or directions of the Truskey people. See *Larocca v. American Chain and Cable Co.*, 13 *N.J.* 1, 7 [97 *A.*2d 680] (1953). In doing that work West was furthering the interest of his general employer, Lamb, in that the purpose of letting out the equipment was being fulfilled. * * * Therefore, under the cases cited, Lamb remained liable for the results of West's negligence whether or not Truskey might have been concurrently negligent, a circumstance of no relevance insofar as plaintiff's action against Lamb is concerned (plaintiff was not suing Truskey).
>
> [60 *N.J.Super.* at 66–67, 158 *A.*2d 359.]

As noted, we imply no view on whether T.D.E. is liable under the doctrine of *respondeat superior* for the alleged negligence of its employee Lee committed while under the control of J.H. Reid. Although acknowledging T.D.E.'s status as a separate corporate entity that performed a material function for the benefit of J.H. Reid's construction business, we also express no view on whether Lee, at the time of the accident, was furthering the interest of his general employer to the extent considered sufficient by some courts to justify the imposition of liability on the general employer. Nor do we express any view on whether J.H. Reid's control of Lee at the time of the accident is itself sufficient to resolve the issue of T.D.E.'s liability.

Judgment reversed. The cause is remanded to the Law Division for further proceedings consistent with this opinion.

POLLOCK, J., dissenting.

In an unreported opinion, the Appellate Division affirmed the judgment of the Law Division granting summary judgment dismissing the individual and representative claims of plaintiff Linda Volb against defendant T.D.E. Services, Inc. (T.D.E.) and Ronald Lee. I would affirm.

I

The case arises out of a fatal accident at a construction site on the New Jersey Turnpike. On the date of the accident, J.H. Reid General Contractors, Inc. (Reid) was the general employer of Charles Volb and the special employer of Ronald Lee. Both Lee and Volb were under the exclusive control of Frank Perelko, a Reid supervisor, who had the right to direct their work and to fire them.

The most important factor in determining a special employer's status is whether the borrowing employer had the right to control the special employee's work. Indeed, the majority acknowledges that "the trial court plainly was correct in concluding that Lee was a special employee of [Reid]...." *Ante* at 116, 651 *A.*2d at 1005. It further acknowledges that "Lee's status as a special employee of [Reid] compels the conclusion that Volb's estate cannot sue Lee." *Ante* at 117, 651 *A.*2d at 1005. I agree that plaintiff may not sue Lee. Unlike the majority, however, I believe that neither may plaintiff sue T.D.E.

To facilitate the hiring of union workers, Reid created T.D.E. and a second subsidiary that is not a party to this action. Reid owned all the stock of both subsidiaries. The four principals of Reid also were the principals of each of the subsidiaries. Apparently, the two subsidiaries hire workers from different unions to work on Reid's construction jobs. Each subsidiary issues paychecks, and Reid delivers them to the workers. In effect, T.D.E. provides a payroll service for Reid.

According to Lee, Reid had hired him from the union hall of Teamsters Local 676 to work on the construction site at Exit 7 of the New Jersey Turnpike. The accident occurred when Perelko directed Lee to unload a dump truck that G.E. Capital Corporation had leased to Reid. While Lee was backing up the truck, it struck and killed Volb.

Plaintiff Linda Volb, as Volb's widow, recovered workers' compensation benefits from Reid. As administratrix of her husband's estate, she then sued various defendants, including Lee and his general employer, T.D.E. The Law Division granted motions for summary judgment by Lee and T.D.E. The Appellate Division affirmed. Before us for review is the judgment in favor of T.D.E.

The issue is whether plaintiff may maintain this wrongful-death action against T.D.E. Traditionally, an employer's liability for the negligent acts of a borrowed employee has depended on whether the employer had retained the right to control the employee's activities that injured another. *Murin v. Frapaul Constr. Co.*, 240 *N.J.Super.* 600, 607–10, 573 *A.2d* 989 (App.Div.1990).

The lower courts correctly concluded that Reid, Lee's special employer, had exclusive control over Lee when he backed the truck over the decedent. Lee's general employer, T.D.E., had neither provided the truck nor retained any control over Lee. The lower courts ruled, therefore, that T.D.E. was not liable for Lee's alleged negligence.

On the facts of this case, that straightforward result comports with both the purpose of tort law and common sense. If the underlying purpose of tort law is to make the workplace safe, the responsibility for worker safety belongs to Reid, which provided the truck and exclusively controlled it, the driver, and the site. Plaintiff has already recovered workers' compensation benefits against her decedent's employer, Reid. To impose tort liability on T.D.E. distorts reality. T.D.E. exists so Reid can bid for union work. Realistically, T.D.E. never could have controlled Lee and did not control him at the time of the accident.

Several principles counsel against permitting plaintiff to maintain a wrongful-death action against T.D.E. First, suits against employers for injuries caused by the negligent acts of loaned employees should depend on the retention of the right to control the activity that caused the injuries. Without the right to control, the employer cannot control the risk of injury. Also, to impose liability on an employer who cannot avoid the risk that caused the injuries is unfair. Second, not every injured worker may recover both workers' compensation benefits and tort damages. As Professor Larson states: "The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer." 2A Arthur Larson, *Workmen's Compensation Law* § 71.00, at 14–1 (1989). Implicit in the concept is the assumption that the wrongdoer played an actionable role through the commission or omission of an act in the events that caused the worker's injury. Although T.D.E. and Reid were separate but related corporations, they were engaged in an integrated-economic activity, construction work on the Turnpike. Because T.D.E. is only a payroll service, it never exercises control over any of its employees. In brief, T.D.E. is not sufficiently involved in Reid's construction work to justify the imposition of an actionable role. Permitting plaintiff to recover workers' compensation against Reid and tort damages against T.D.E. would impose an additional cost on Reid because it chose to do business through a subsidiary. I would leave the imposition of any such cost or "tax" to the Legislature.

In her petition for certification, plaintiff cited four cases. She relied primarily on *Lyon v. Barrett*, 89 *N.J.* 294, 445 *A.*2d 1153 (1982), not discussed by the majority, and *Vernon v. Supermarket Services Corp.*, 250 *N.J.Super.* 8, 593 *A.*2d 345 (App.Div.1991), discussed by the majority, *ante* at 125, 651 *A.*2d at 1010. On the unique facts of this case, I would find that *Lyon* does not prevent T.D.E. from enjoying the same protection as its parent corporation, Reid. In *Lyon*, Barrett, a lawyer, established a professional corporation for the practice of law in a building that he owned. This Court found that the Workers' Compensation Act did not

prevent a legal secretary employed by the professional corporation from suing Barrett in his capacity as owner and landlord. The critical distinction between *Lyon* and the instant case is that Barrett, in his dual capacities as landlord and employer, operated as two entities with separate business purposes. As a landlord, Barrett owed the same duty to the plaintiff that he owed to other tenants and their employees. *Id.* at 305, 445 *A.*2d 1153. As an attorney, however, Barrett was plaintiff's employer and could avail himself of the workers' compensation bar. In the present case, T.D.E. and Reid, although separate corporations, shared the singular purpose of performing construction work for Reid. Thus, *Lyon* involved a single person acting in dual capacities. By contrast, the present case involves two corporations acting in a single capacity. If Reid had "borrowed" Lee from a completely unrelated general employer, that employer, as long as it did not retain any control over Lee, would not be liable for Lee's negligence. T.D.E. should enjoy the same protection as any other general employer.

*Vernon, supra,* 250 *N.J.Super.* 8, 593 *A.*2d 345, is not illuminating. In *Vernon,* an employee of one wholly-owned corporate subsidiary who had recovered workers' compensation against the parent was allowed to sue another wholly-owned subsidiary for the acts of that subsidiary's negligent employee who had injured the plaintiff. The case did not involve a "borrowed" employee and therefore does not raise the question of the liability of a general employer, such as T.D.E., for the acts of a "borrowed" employee over whom the general employer has not retained any control. Furthermore, the opinion does not discuss the activities or interrelationships of the various corporate entities. It assumes that those entities were engaged in separate activities such that the workers' compensation bar against suing the parent and one subsidiary did not bar suit against the other subsidiary.

In this Court, the majority has instilled the petition with a second life. For me, the majority's intricate analysis of statutory

immunity under the Workers' Compensation Act, *ante* at 116–27, 651 *A*.2d at 1004–11, whatever merit it might hold for another case, is irrelevant. I would not reach for the issue to import so significant a change into the law. The majority acknowledges that "[i]ntuition might suggest that a broader immunity would be consistent with the underlying objectives of workers' compensation legislation, and the Legislature is at liberty to enact a more comprehensive, enterprise-based immunity." *Ante* at 126, 651 *A*.2d at 1010. Given the paramount role of the Legislature in workers' compensation law, I believe the more judicious approach simply would be to flag the issue for the Legislature.

Nor would I reach for the majority's novel theory that would impose liability on a general employer for the acts of a loaned employee who somehow was furthering the interest of the general employer while acting under the exclusive control of a special employer. Rather, I would rely, as have the parties and the lower courts, on the traditional *respondeat superior* principle that liability turns on control.

As the entity that supplied the truck and exclusively controlled Lee's operation of it, Reid, and Reid alone, should bear the cost of the risk of decedent's death. Reid created T.D.E. to obtain construction employees for union jobs. To hint that T.D.E. may have been furthering its interest in "lending" Volb to work for Reid is to create a tautology. The only reason for T.D.E.'s existence was to hire union workers for Reid. In this context, to suggest that T.D.E. might be liable because Lee was furthering its interest while under the control of Reid does not serve the purpose of tort law. The majority can sustain its suggestion only by viewing the sole purpose of tort law as the expansion of third-party liability without regard to the allocation of the risk of loss to the party best able to control it.

Cases arising from workplace accidents involving the workers' compensation immunity and third-party tort liability are fact sensitive. A case with a different set of facts might be more conducive for introducing so significant a proposal as that pro-

posed by the majority. Perhaps because the facts do not readily lend themselves to the notion that T.D.E. might be liable in tort because Lee was furthering T.D.E.'s interest, neither the parties nor the lower courts considered it.

The opinions cited by the majority do not support the imposition of tort liability on a general employer in the present case. Although Judge (later Justice) Schettino's concurrence in *Devone v. Newark Tidewater Terminal, Inc.,* 14 *N.J.Super.* 401, 82 *A.*2d 425 (App.Div.1951), advocated a furtherance-of-the-general-employer's-interest test, the majority in *Devone* relied on the traditional control test. For the majority, the critical consideration was that "control" meant "ordering not only what shall be done but how it shall be done." *Id.* at 405, 82 *A.*2d 425. In *Devone,* moreover, the general employer had provided both the dinky engine and the operator that caused the plaintiff's injury. Here, Reid provided only the driver, but not the truck.

I cannot find a single case—and the majority cites none—holding a general employer liable for the negligence of an employee who is loaned to a special employer and who, while operating a vehicle under the exclusive control of the special employer, injures a fellow employee. The general employer in *Viggiano v. William C. Reppenhagen, Inc.,* 55 *N.J.Super.* 114, 119, 150 *A.*2d 40 (App. Div.1959), discussed by the majority, *ante* at 130–31, 651 *A.*2d at 1013, was "engaged in the business of renting out motor vehicles or some other apparatus and [furnished] a driver or operator as part of the hiring. . . ." Because the special employer exercised no control over the driver, the court found sufficient evidence to withstand summary judgment for the general employer under both the furtherance-of-interest and control tests. *Id.* at 120, 150 *A.*2d 40. Likewise, in *Larocca v. American Chain & Cable Co.,* 13 *N.J.* 1, 97 *A.*2d 680 (1953), discussed by the majority, *ante* at 130–31, 651 *A.*2d at 1012–13, the general employer provided both the crane that injured the plaintiff and the crane operator. We recognized that the general employer's liability for the acts of a negligent employee turned on whether the employer had retained

the right of control. Finding sufficient evidence that the general employer had retained control, we approved the reversal of summary judgment for the employer. Like the defendants in the other cases, the employer in *Cross v. Robert E. Lamb, Inc.*, 60 *N.J.Super.* 53, 158 *A.*2d 359 (App.Div.), *certif. denied*, 32 *N.J.* 350, 160 *A.*2d 847 (1960), owned the equipment, a hoist, and employed the hoist operator. Based on those facts, the Appellate Division rejected a plain-error challenge to the jury charge and sustained the judgment of liability against the general contractor for injuries caused by the negligent operation of the hoist.

The facts of *J.L. Querner Truck Lines, Inc. v. Safeway Truck Lines, Inc.*, 65 *N.J.Super.* 554, 561, 168 *A.*2d 216 (App.Div.), *aff'd*, 35 *N.J.* 564, 174 *A.*2d 201 (1961), discussed by the majority, *ante* at 131, 651 *A.*2d at 1013, are so inapposite as to render irrelevant the statement in the opinion that "[t]he crucial issue is whether the employee was furthering the interests of his general employer." *Querner* was a suit for property damage to a trailer that struck an overpass. The driver was a general employee of the owner of the trailer. At the time of the accident, an employee of the defendant truck terminal, Safeway Truck Lines, Inc., was directing the driver on the route to the terminal. The quoted language appears in a discussion leading to the conclusion that the lease of the tractor-trailer to Safeway did not constitute a bailment for hire. The trial court dismissed the owner's complaint at the conclusion of the entire case. In reversing, the Appellate Division found the evidence sufficient to justify submitting to the jury the question whether Safeway, through its employee, had exercised control over the trailer sufficient to hold it liable. *Querner* hardly supports the imposition of liability on a general employer for the acts of a "loaned" employee who was acting under the exclusive control of a special employer.

The opinions cited by the majority, *ante* at 129–32, 651 *A.*2d at 1012–14, in support of the furtherance-of-interest test also demonstrate continued support for the control test. *See e.g., Larocca,*

*supra,* 13 *N.J.* at 6, 97 *A.*2d 680 (holding that liability turns on right to exercise control over servant); *Querner, supra,* 65 *N.J.Super.* at 566, 168 *A.*2d 216 (stating that "[i]t remains to be considered whether defendant could be found liable because it negligently exercised some measure of control over trailer through its employer"); *see also Murin, supra,* 240 *N.J.Super.* at 610, 573 *A.*2d 989 (finding special employer not liable because general employer retained control over plaintiff); *State v. Joule Technical Corp.,* 126 *N.J.Super.* 496, 501, 315 *A.*2d 697 (App.Div.1974) (holding control test is logically determinative test to demonstrate that defendant was not electrical contractor for purposes of licensing); *Blessing v. T. Shriver & Co.,* 94 *N.J.Super.* 426, 439, 228 *A.*2d 711 (App.Div.1967) (finding liability based on retention of effective control over work).

Moreover I do not share the majority's uncertainty "whether or to what extent the trial court considered principles of *respondeat superior* liability in granting summary judgment in favor of T.D.E." *Ante* at 127, 651 *A.*2d at 1011. My reading of the record leads me to conclude (1) that the parties and the lower courts understood the relationship between control and the doctrine of *respondeat superior* and (2) that by deciding that Lee was under the exclusive control of Reid, the courts correctly concluded that T.D.E. was not responsible for Lee's negligence under the doctrine.

Without belaboring the point, I see no need for a remand to the Law Division to reconsider an issue that it already has decided. The briefs, supplemental submissions, transcripts, and lower court opinions persuade me that those courts fully understood that they were deciding that T.D.E. was not liable under *respondeat superior.* They reached their decisions under the only theory of *respondeat superior* that makes sense in this case, whether Reid exclusively controlled Lee at the time of the accident. The majority's belated attempt to introduce an alternative theory should not change the outcome. The last thing this case needs is another court event.

I would affirm the judgment of the Appellate Division.

GARIBALDI, J., joins in this dissent.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER and STEIN—3.

*For affirmance*—Justices POLLOCK and GARIBALDI—2.